**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN DOE 1 and JANE DOE 1, in their own capacity and as parent of CHILD DOE 1, JOHN DOE 2 and JANE DOE 2, in their own capacity and as parent of CHILD DOE 2, JOHN DOE 3 and JANE DOE 3, in their own capacity and as parent of CHILD DOE 3, JOHN DOE 4 and JANE DOE 4, in their own capacity and as parent of CHILD DOE 4 JOHN DOE 5 and JANE DOE 5, in their own capacity and as parent of CHILD DOE 5 and on behalf of those similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 2:22-cv-112 |
| Plaintiffs | ) ) ) | |
| v. | ) ) ) | |
| UPPER SAINT CLAIR SCHOOL DISTRICT, a Pennsylvania governmental entity, PHILLIP J. ELIAS, DAPHNA GANS, BARBARA L. BOLAS, PATRICK A. HEWITT, LOUIS P. MAFRICE, JR., MICHAEL R. MASCARO, ANGELA B. PETERSEN, JENNIFER A. SCHNORE, DANIELLE Z. WETZEL, all individual elected officials sued in their official capacity as members of the UPPER SAINT CLAIR SCHOOL DISTRICT BOARD OF DIRECTORS, a Pennsylvania elected legislative body, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

---

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT AND SECTION
504 OF THE REHABILITATION ACT**

---

Plaintiffs, school-age children attending school in Defendant Upper Saint Clair School

District that suffer from disabilities which renders them medically vulnerable to COVID-19, by and

through their parents, bring this action for declaratory and injunctive relief on behalf of themselves

and a class of similarly situated disabled children who are at severe risk of illness and injury due to their disabilities and allege as follows:

## INTRODUCTION

1.      Despite a clear understanding of the necessity and importance of in-person education and protecting the mental and physical health and lives of children, the School Board of Upper Saint Clair School District, on January 10, 2022, by a 7-2 vote, voted to reverse the Health and Safety Plan of the District requiring universal masking and instead updated the Health and Safety Plan to make mask wearing optional effective as of January 24, 2022, regardless of transmission rate of infection.[1]

2.      All authorities, as well as Defendants, agree that in-person instruction is necessary for the mental well-being of all children. See Guidance for COVID-19 Prevention in K-12 Schools, Updated Jan. 6, 2022 ("Students benefit from in-person learning, and safely returning to in-person instruction continues to be a priority.").[2]

3.      Experts agree that COVID-19 is primarily spread through respiratory droplets emitted when people cough, sneeze, talk, or even breathe that are then inhaled by people nearby.[3]

---

[1]Defendants, Phillip J. Elias, Daphna Gans, Barbara L. Bolas, Louis P. Mafrice, Jr., Michael R. Mascaro, Angela B. Petersen, Danielle Z. Wetzel,  voted in favor of optional masking as alleged herein. Defendants Patrick A. Hewitt, and Jennifer Schnore voted against the measure in a failed attempt to both protect Class Plaintiffs from discrimination and to shield the School District from this litigation. The latter Defendants are only included to allow the Court to grant the relief requested herein; no aspersions as to their personal actions as Board Members are intended by this filing.

[2]https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html#:~:text=CDC%20recommends%20universal%20indoor%20masking,layered%20prevention%20strategies%20in%20place.

[3] CDC, Scientific Brief: SARS-CoV-2 Transmission, May 7, 2021, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html ("The principal mode by which people are infected with [COVID-19] is through exposure to respiratory fluids carrying infectious virus. Exposure occurs in three principal ways: (1) inhalation of very fine respiratory droplets and aerosol particles, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled either directly by virus-containing respiratory fluids or indirectly by touching surfaces with virus on them.").

4.      Significantly, asymptomatic carriers of COVID-19 transmit the disease. Persons who lack symptoms of COVID-19 ("asymptomatic") or do not yet know they have COVID-19 ("presymptomatic") may feel perfectly fine. However, they are estimated to account for more than 50% of transmissions.[4]

5.      "It is essential to implement a multifaceted, layered approach to reduce the risk of indoor airborne transmission of COVID-19."[5] The CDC explains that a "layered approach" to "reduce the spread of disease" from COVID-19 requires the concurrent use of multiple strategies, of which **"using masks consistently and correctly"** is necessary and has "proven effective."[6]

6.      As recently as January 4, 2022, the CDC reinforced the need for continued application of a "layered approach" to prevention of the spread of COVID-19, requiring universal masking while indoors, stating: "Mask use and layered prevention strategies, such as receiving all recommended vaccination and booster doses, physical distancing, screening testing, and improved ventilation, are key to preventing COVID-19 and decreasing transmission."[7]

7.      In order to keep children in-school, every step necessary to a "layered approach" for preventing the spread of COVID-19, which requires universal masking, should be followed. Id.

8.      The current, most prevalent variant of COVID-19, knows as the Omicron variant, is extremely infectious and is spread much more readily than either the original SARS-CoV-2 strain or the Delta Variant. See CDC Omicron Variant: What You Need to Know, Updated Dec. 20,

---

[4] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html

[5] https://www.epa.gov/coronavirus/implementing-layered-approach-address-covid-19-public-indoor-spaces

[6]  https://www.cdc.gov/mmwr/volumes/70/wr/mm7030e2 .html (emphasis added).

[7] https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine-isolation-background.html

2021("The Omicron variant likely will spread more easily than the original SARS-CoV-2 virus and how easily Omicron spreads compared to Delta remains unknown. CDC expects that anyone with Omicron infection can spread the virus to others, even if they are vaccinated or don't have symptoms.").[8] Unmasked individuals are both at risk of immediate and irreparable harm from COVID-19, as well as can be the cause of a higher risk of spreading COVID-19 and resultant serious illness and/or death. Id.

9.      Like the rest of Pennsylvania, Allegheny County has suffered from the spread of COVID-19. Beginning in August of 2021, and through the date of this filing, Allegheny County has been continuously in the high infection rate. See CDC COVID Data Tracker dated 1/10/2022.

10.     The Board's vote neither accounts for the fact that transmission rate of infection from COVID-19 was still in the "High" category on January 10, 2022 and that it continues to dramatically increase because of Omicron, nor that universal masking is essential to the prevention of the spread of this airborne disease.

11.     According to the USC School District Records, as of January 10, 2022, the District currently has just under 100 students that either had cancer or have some type of autoimmune deficiency placing them in the high - risk category for infection. See January 10, 2022 School Board Meeting School Board Report, p.2.

12.     According to the USC School District Records, as of January 10, 2022, the District has 300 additional students that suffer from upper respiratory conditions, which places them at an enhanced risk, for infection. See January 10, 2022 School Board Meeting School Board Report, p.2.

13.     The Board's vote fails to account for the fact that there are as many as 400 children

---

[8] https://www.cdc.gov/ coronavirus/2019-ncov/variants/omicron-variant.html

in the school district who are medically fragile disabled students who are either high-risk or enhanced-risk for infection, and require the protection afforded by universal masking to reduce the risk of spread of COVID-19, as well as helps them to have access to the school buildings for in-person instruction.

14.     The Board's vote permitting optional masking forces the parents of medically fragile school children with disabilities to make the shockingly unfair or unjust decision of deciding whether to pull their children out of in-person learning which causes mental harm and havoc on the child and family, or face the quantifiably increased risk of physical harm caused by exposure to severe illness or death as a result of COVID-19.

15.     Since August of 2021 and through the present, due to the high transmission rate of infection from COVID-19 in Allegheny County, the CDC, the Pennsylvania Department of Health, (PADOH), the Allegheny County Department of Health, (ACDOH), all have recommended that school children should universal mask while in school buildings. See CDC COVID Data Tracker dated 1/10/2022, p. 2. ("Everyone in Allegheny County should wear a mask in public, indoor settings.")

16.     Further, the American Academy of Pediatrics (AAP) and Children's Hospital of Pittsburgh both recommend universal masking in schools.[9]

17.     The Upper Saint Clair School Board Policy Manual requires that "Board procedures and policies shall be consistent with law, have a rational and substantial relationship to a legitimate purpose of the Board, and be directed towards the maintenance and support of a thorough and

_____

[9]https://www.chp.edu/our-services/infectious-diseases/covid-19 at COVID-19 and Schools FAQs (PDF) pg 5 ("14. Who should mask at school? Kids? Staff? With rare exception, everyone over the age of two should be wearing a mask to help prevent spread.")

efficient system of public education in this district" See Board Policy Manual, Section 000, Code 002, citing to 24 P.S. 407.

18.     The Upper Saint Clair School Board Policy Manual requires the Board to protect the health and safety of the students by minimizing the transmission of communicable diseases. "In order to safeguard the school community from the spread of certain communicable diseases, the Board requires that guidance and orders from state and local officials, established Board policy and administrative regulations, and Board-approved health and safety plans be followed by students, parents/guardians and district staff." See Board Policy, Section 200 Pupils, Immunizations and Communicable Diseases, Code 203, citing to 24 P.S. 1303a and 28 Pa. Code 23.81 et seq.

19.     The School Board's Policy Manual requires the Board "must [] maintain[] and operate[] [district facilities] in a condition that prioritizes the safety of students, staff and visitors." See Board Policy, Section 700 Property, Title Facilities and Workplace Safety, Code 705.

20.     As of December 7, 2020, after COVID-19 had been in the United States for nearly one year, the Board recognized that face coverings are necessary for the health and safety of the District. "The Board requires that all students, staff and visitors adhere to state and local health and safety orders, Board policy, administrative regulations and Board-approved plans requiring face coverings or other protective devices where needed for safety purposes." See Board Policy Manual, Section 700 Property, Title Facilities and Workplace Safety, Code 705, Adopted December 7, 2020.

21.     As of December 7, 2020, after COVID-19 had been in the United States for nearly one year, the Board amended the Board Policy Manual by recognizing that the Board is required to provide school buildings with an environment which is healthy and safe for the children, staff, and visitors. "The Board recognizes that district facilities must be maintained and operated in a condition

-6-

that prioritizes the safety of students, staff and visitors." See Board Policy Manual, Section 700 Property, Title Facilities and Workplace Safety, Code 705, Adopted December 7, 2020.

22.     The Board Policy Manual requires "[t]he district administration will develop and implement health and safety rules and regulations that will promote health and safety in school buildings and facilities and on school property." See Board Policy Manual, Section 700 Property, Title Facilities and Workplace Safety, Code 705-AR-1, Adopted December 7, 2020.

23.     The Board Policy Manual requires "[a]ll employees will practice good health and safety habits and be aware of conditions that may make the environment unsafe. Staff are required to address health and safety concerns and report any unsafe condition to the building principal or immediate supervisor, using the Hazardous/Unsafe Condition Reporting Form." See Board Policy Manual, Section 700 Property, Title Facilities and Workplace Safety, Code 705-AR-1, Adopted December 7, 2020.

24.     Public health concerns are a compelling governmental interest. The Supreme Court has determined that the public health concern of "[s]temming the spread of COVID-19" qualifies as "a compelling interest" of the government. ***See Roman Catholic Diocese of Brooklyn v. Cuomo***, 592 U. S. ___, ___, 141 S. Ct. 63, at 67 (2020) (per curiam) (slip op., at 4) ("[s]temming the spread of COVID-19 is unquestionably a compelling interest."); ***see also American Civil Liberties Union v. Ashcroft***, 322 F.3d 240, 261 (3d Cir.2003) ('ACLU II'). ("Government's compelling interest in protecting minors.").

25.     Prior to the Board vote on January 10, 2022, the Defendant Board recognized the public health significance of COVID-19 and its impact on the District when it approved a Health and Safety Plan designed to help keep the children in school and protect the children's health and well-

-7-

being while in school during the national pandemic caused by COVID-19. See Exhibit 1, Health and Safety Plan dated June 28, 2021.

26.     Since stemming the spread of COVID-19 is a compelling governmental interest and the Board recognizes this fact, then the Board should be doing everything in its power to stem the spread of infection caused by COVID-19 while it is in a substantial or high level risk of transmission in Allegheny County, as the Board is required to do to protect the health and safety of the children, staff, and visitors. See Board Policy Manual, Section 700 Property, Title Facilities and Workplace Safety, Code 705-AR-1, Adopted December 7, 2020.

27.     According to the Board Policy Manual, the Board is responsible for acquiring the reliable information from responsible sources which will enable it to make the best possible decisions about the scope and nature of the educational program. " Utilize appropriate data to make informed decisions". See Board Policy Manual, Section 000 Local Board Procedures, Board Philosophy/Principles for Governance and Leadership, Code 011, Evaluate Continuously,

28.     Reliable information from responsible sources is readily found from the CDC, PADOH, ACDOH, EPA, American Academy of Pediatrics (AAP), and UPMC Children's Hospital of Pittsburgh, all of which agree that universal masking in schools is essential for preventing the spread of infection to children caused by COVID-19.

29.     Instead of following the reliable information from responsible sources and supporting the compelling governmental interest by doing everything in its power to stem the spread of infection caused by COVID-19 while it is in a substantial or high level risk of transmission in Allegheny County, the Board voted on January 10, 2022, to arbitrarily and capriciously remove the protection provided by universal masking from the District as of January 24, 2022 regardless of rate of

transmission of infection from COVID-19 in Allegheny County.

30.     In doing so, the School Board has put the parents of medically vulnerable students in the position of having to decide whether to keep their children at home where they will likely suffer continued learning loss or risk placing them in an environment that presents a serious risk to their health and safety.

31.     This brutal choice forces children into a situation that violates Section 504 and the ADA.

32.     The ADA and Section 504 prohibit the exclusion of students with disabilities from public educational programs and activities.

33.     Plaintiffs in this matter are students with disabilities within the meaning of the ADA that carry an increased risk of serious complications or death in the event that they contract COVID-19.

34.     Disabling, underlying medical conditions which occur in children have been identified by the Center of Disease Control (CDC) as risk factors for severe COVID-19 infection or death—with or without the vaccination, include a) lung disease, including asthma, chronic obstructive pulmonary disease (e.g., bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure and coronary artery disease; © chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological

or developmental disability; (k) cancer or cancer treatments; (l) genetic disorders; and/or (m) muscular dystrophy or spinal cord injury. Further, some of the Plaintiffs and the proposed Class are ineligible to receive the vaccine under the Food and Drug Administration regulations.

## JURISDICTION AND VENUE

35.     Plaintiffs incorporate the foregoing paragraphs as is set forth in full herein.

36.     This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §1331, 28 U.S.C. §§1343(a)(3), (4), 28 U.S.C. §§ 2201–2202.

37.     This Court has subject matter jurisdiction over the ADA Title II and Section 504 of the Rehabilitation Act claims in this case pursuant to 28 U.S.C. § 1331. Plaintiffs' claims arise under the laws of the United States and the relief sought herein is within the power of the Court to grant. See 29 U.S.C. § 701, et seq. and 20 U.S.C. § 1681, et seq.

38.     There exists an actual and justiciable controversy between Plaintiffs and Defendants requiring resolution by this Court.

39.     Plaintiffs have no adequate remedy at law.

40.     Venue is proper before the United States District Court for the Western District of Pennsylvania, Pittsburgh Division, under 28 U.S.C. §1391 because all parties reside or otherwise are found in this District, and all acts and omissions giving rise to Plaintiffs' claims occurred in the Western District of Pennsylvania.

41.     The Court has personal jurisdiction over Defendants because they are: (a) a public school district head quartered in Allegheny County, Pennsylvania; (b)an elected legislative entity charged with directing the district; and © the individuals members of that legislative entity in their official capacity.

# PARTIES

## I.    The Plaintiffs

42.     JOHN DOE 1, and JANE DOE 1, live in the School District and bring claims in their own capacity and as parent of CHILD DOE 1, who is a student in the Upper Saint Clair School District, is medically fragile and considered to be disabled under the ADA, and brings this action on behalf of themselves and those similarly situated.

43.     JOHN DOE 2 and JANE DOE 2, live in the School District and bring claims in her own capacity and as parent of CHILD DOE 2, who is a student in the Upper Saint Clair School District, is medically fragile and considered to be disabled under the ADA, and brings this action on behalf of themselves and those similarly situated.

44.     JOHN DOE 3 and JANE DOE 3, live in the School District and bring claims in her own capacity and as parent of CHILD DOE 3, who is a student in the Upper Saint Clair School District, is medically fragile and considered to be disabled under the ADA, and brings this action on behalf of themselves and those similarly situated.

45.     JOHN DOE 4 and JANE DOE 4, live in the School District and bring claims in her own capacity and as parent of CHILD DOE 4, who is a student in the Upper Saint Clair School District, is medically fragile and considered to be disabled under the ADA, and brings this action on behalf of themselves and those similarly situated.

46.     JOHN DOE 5 and JANE DOE 5, live in the School District and bring claims in her own capacity and as parent of CHILD DOE 5, who is a student in the Upper Saint Clair School

District, is medically fragile and considered to be disabled under the ADA, and brings this action on behalf of themselves and those similarly situated.

47.     The putative class of students Plaintiffs represent similarly suffer from a host of conditions warranting protection under the ADA and Section 504 of the RA and should be shielded from discrimination by their school district.

## II.     The Defendants

48.     Defendant School District is a municipal organization charged with the education of K-12 students in the North Allegheny School District, over eight-thousand, six hundred (8,600) students. Defendant School District is the fifth largest school district in this Commonwealth.

49.     Defendant School Board is made up of nine individual school directors residing and conducting business in Allegheny County, Pennsylvania.

50.     Defendant School Board is an elected school board residing and conducting business in Allegheny County, Pennsylvania.

51.     Upon information and belief, Defendant, Phillip J. Elias, is Board President, an Allegheny County resident and member of the School Board, sued here in his official capacity.

52.     Upon information and belief, Defendant, Daphna Gans, is Board Vice-President, an Allegheny County resident and member of the School Board, sued here in her official capacity.

53.     Upon information and belief, Defendant, Barbara L. Bolas, is an Allegheny County resident and member of the School Board, sued here in her official capacity.

54.     Upon information and belief, Defendant, Patrick A. Hewitt, is an Allegheny County resident and member of the School Board, sued here in his official capacity.

55.     Upon information and belief, Defendant, Louis P. Mafrice, Jr., is an Allegheny County resident and member of the School Board, sued here in his official capacity.

56.     Upon information and belief, Defendant, Michael R. Mascaro, is an Allegheny County resident and member of the School Board, sued here in his official capacity.

57.     Upon information and belief, Defendant, Angela B. Petersen, is an Allegheny County resident and member of the School Board, sued here in her official capacity.

58.     Upon information and belief, Defendant, Jennifer A. Schnore, is an Allegheny County resident and member of the School Board, sued here in her official capacity.

59.     Defendant School District and School Board are "distinct legal entit[ies] with the capacity to be sued for injuries incurred as a result of the execution of its statutory duties and responsibilities." Thus, they are a "public entity" within the meaning of the Americans with Disabilities Act, 28 C.F.R. §35.104, and receives federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. §794(a).

## FACTS

### I.     COVID-19 and its Delta Variant Spread Through the Breath of Others

60.     Plaintiffs incorporate the foregoing paragraphs as is set forth in full herein

61.     COVID-19 is an extremely infectious and deadly disease that is transmitted from person to person.

62.     Experts agree that COVID-19 is primarily spread through respiratory droplets emitted when people cough, sneeze, talk, or even breathe that are then inhaled by people nearby.[10]

63.     Asymptomatic carriers of COVID-19 can also transmit the disease. Persons who lack symptoms of COVID-19 ("asymptomatic") or do not yet know they have COVID-19 ("presymptomatic") may feel perfectly fine. However, they are estimated to account for more than 50% of transmissions.[11]

64.     The current COVID-19 variant, known as the Omicron Variant, is extremely infectious and is spread much more readily than even the Delta Variant and the original SARS-CoV-2 strain.[12]

65.     There is no cure for COVID-19. The vaccine has only recently been approved for children under 12 years old. This means that children under 12 years old are only starting to have the ability or opportunity to become fully vaccinated. The vaccine has been proven less effective for those individuals with weakened or compromised immune systems who are unable to produce a robust immune response to the vaccine.

---

[10] CDC, Scientific Brief: SARS-CoV-2 Transmission, May 7, 2021, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html ("The principal mode by which people are infected with [COVID-19] is through exposure to respiratory fluids carrying infectious virus. Exposure occurs in three principal ways: (1) inhalation of very fine respiratory droplets and aerosol particles, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled either directly by virus-containing respiratory fluids or indirectly by touching surfaces with virus on them.").

[11] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html

[12] CDC, Delta Variant: What We Know About the Science, Aug. 6, 2021, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (noting that the Delta variant is "more than 2x as contagious as previous variants" and studies indicated that "patients infected with the Delta variant were more likely to be hospitalized").

66.     School-aged children with certain protected disabilities, including a range of underlying medical conditions, face a higher rate of severe illness from COVID-19 as compared to other children without those underlying medical conditions. According to the CDC, "children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19."[13] And, as with adults who face increased risks, "children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19."[14]

67.     Upon information and belief, the schools located within the Upper Saint Clair School District regularly serve students with these exact disabilities—moderate to severe asthma, chronic lung and heart conditions, cerebral palsy, Down syndrome, obesity, type-2 diabetes, and weakened immune systems impact a significant portion of the population.

68.     Defendant School District regularly serves students with these disabilities—moderate to severe asthma, chronic lung and heart conditions, cerebral palsy, Down syndrome, obesity, type-2 diabetes, and weakened immune systems impact a significant portion of the population.

A.      **The necessity of masking for safe access to school.**

69.     Prevention of spreading of COVID-19 is done through a layered approach, including wearing face masks, washing hands, cleaning surfaces, social distancing, and introducing new air filters are some examples of modifications that may reduce some risk of COVID-19 transmission.[15]

---

[13] Centers for Disease Control, COVID-19: People with Certain Medical Conditions, May 13, 2021, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

[14] Id.

[15] See https://www.epa.gov/coronavirus/implementing-layered-approach-address-covid-19-public-indoor-spaces ("It is essential to implement a multifaceted, layered approach to reduce the risk of indoor airborne transmission of COVID-19.")

70.   For school age children who are not yet fully vaccinated or whose disabilities result in a less robust response to the vaccine, the risk of contracting COVID-19 is most successfully mitigated through universal masking and social distancing. The ABC Science Collaborative, led by top physicians on the staff of Duke University, found that masking was effective in preventing in-school COVID-19 transmission regardless of the physical distance maintained between children as part of social-distancing efforts.[16]

71.   "When teachers, staff, and students consistently and correctly wear a mask, they protect others as well as themselves."[17] The cloth layer blocks the droplets from releasing into the environment, along with the microorganisms these particles carry. To be more specific, masks block the large droplets ("20-30 microns and up") as well as finer droplets.[18]

72.   The CDC,[19] the American Academy of Pediatrics,[20] the Pennsylvania Department of Health[21] and Allegheny County Department of Health, all recommend universal masking in schools in an effort to reduce the risk of transmission of COVID-19.

---

[16] https://abcsciencecollaborative.org/wp-content/uploads/2021/06/ABCs-Final-Report-June-2021.06-esig-DB-KZ-6-29-21.pdf?fbclid=IwAR3XDNVh44k8mrrfd2rcJz8rm-zOdtmlouMDkt-Tt3P3zXicWQeeU5E6wA8

[17] Id.

[18] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/maskingscience-sars-cov2.html (last visited Sept. 2, 2021).

[19] CDC, Guidance for COVID-19 Prevention in K-12 Schools, updated Aug. 5, 2021, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html

[20] https://www.aap.org/en/pages/2019-novel-coronavirus-COVID-19-infections/clinical-guidance/COVID-19-planning-considerations-return-to-in-person-education-in-schools/

[21] See August 31, 2021 PADOH Order.

73.     The Pennsylvania Department of Education also supports universal masking to reduce the risk of transmission of COVID-19.[22]

74.     Unmasked individuals are at risk of immediate and irreparable harm from COVID-19, as well as at a higher risk of spreading COVID-19, and the consequences of serious illness and/or death.

75.     Accordingly, the entirely reasonable modification being sought in this case is *community masking: protection of selves and others*. Universal masking was successfully implemented in public school districts across Pennsylvania during the 2020 - 2021 school year.

76.     Universal masking was successfully implemented by the Upper Saint Clair School District in the fall of 2021 and no schools were closed due to COVID-19 infection.

77.     Upon information and belief, universal masking was successfully implemented by Defendants during the 2020 - 2021 school year and the fall of 2021.

78.     Upon information and belief, universal masking would not cause any undue hardship on Defendants and would serve both the interests of Plaintiffs and the public in general by greatly decreasing the risk of COVID-19 infection spreading throughout the Defendant School District.

**B.     A Purely Voluntary Opt-out of Masking Pits Children Against Each Other and Creates Serious Risk of Injury and Death.**

79.     As schools reopened in the fall of 2021, COVID-19 infection numbers among school aged children continued to rise.[23]

---

[22] See September 10, 2021 Directive of the PDE.

[23] See August 31, 2021 Order of the PADOH.

80.     On August 14, 2021, Allegheny County's COVID-19 community transmission level was moved from substantial to high. At that time, the Center for Disease Control, ("CDC"), the Pennsylvania Department of Health, ("PADOH"), the Allegheny County Health Department, ("ACDOH"), as well as the District Physician ALL recommended that to protect the children and to limit the spread of COVID-19 within the School District and the community, the School District should immediately implement universal masking.

81.     On June 28, 2021, the School Board adopted a Health and Safety Plan which required universal masking in school buildings to protect the children and staff in accordance with the School Board's Policy Manual, the District's Health and Safety Plan and recommendations of the CDC, the PADOH, the ACDOH and the District Physician, because COVID-19 transmission rates in Allegheny County had increased from "Moderate" in July to "High" in early August. See Exhibit 1.

82.     On August 18, 2021, the School Board updated the Health and Safety Plan and continued to require universal masking in school buildings while the rate of transmission of COVID-19 remained in a high transmission rate of infection in Allegheny County.

83.     On August 31, 2021, the Acting Secretary of the PADOH entered an Order with an effective date of September 7, 2021, requiring the wearing of face coverings for all K-12 public school districts in the Commonwealth.

84.     On December 8, 2021, in the case of Corman v. Acting Sec'y of Pa. Dep't of Health, 2021 WL 6071796 (Pa. Dec. 10, 2021), the Pennsylvania Supreme Court affirmed the decision of the Pennsylvania Commonwealth Court which determined that the Acting Secretary of the PADOH lacked authority to enter the Order of August 31, 2021.

85.     On January 10, 2022, the School Board again updated the Health and Safety Plan, and this time voted, by a 7 - 2 majority, to change the universal masking requirement in school buildings, in favor of an optional masking policy effective as of Monday January 24, 2022, despite the fact that the rate of transmission of COVID-19 remained in a high transmission rate of infection in Allegheny County and was dramatically increasing due to the Omicron Variant.

86.     The vote on January 10, 2022, displayed not only a rejection of legal and medical authority, but was in direct disregard for the Board's own policy manual and for the Board's constituency, and creates discrimination under the ADA and RA.

87.     Relevant here, the Board, as shown by its vote, now intends to make masks optional as of January 24, 2022, regardless of local transmission rates of infection from COVID-19 all reliable medical advice, and the discriminatory result under the ADA and RA.

88.     Defendants' attempt to change the status quo and the District-wide policy through one act, is in violation of their own Board procedures, including the requirement that a change in policy be read at a first meeting and voted on at a second meeting after the proposed change is read a second time.

89.     Prior to the January 10, 2022 vote, each member of the Board was aware and had full and complete knowledge that the COVID-19 virus primarily spread through respiratory droplets emitted when people cough, sneeze, talk, or even breathe, which are then inhaled by people nearby.

90.     Prior to the January 10, 2022 vote, each member of the Board was made aware and had full and complete knowledge that COVID-19 was rapidly spreading through Allegheny County and was in the high transmission rate.

91.     Prior to the January 10, 2022 vote, each member of the Board was made aware and had full and complete knowledge that over 50% of COVID-19 transmissions occur from individuals who are pre-symptomatic or asymptomatic.

92.     Prior to the January 10, 2022 vote, each member of the Board was made aware and had full and complete knowledge that a layered approach to preventing the spread of COVID-19 is necessary and to be effective wearing masks is required.

93.     Prior to the January 10, 2022 vote, each member of the Board was made aware and had full and complete knowledge that protecting public health is a compelling governmental interest which is more important than individual parent's legitimate rights to raise their children as they see fit.

94.     Prior to the January 10, 2022 vote, each member of the Board was made aware and had full and complete knowledge that individual parent's legitimate rights are limited when confronted by a public health issue.

95.     Defendants decision to institute a health and safety plan which permits optional masking pits child-against-child, endangering the lives of children with disabilities. Parents of school children with disabilities are forced to hope other parents will require masking, and not opt-out. But when parents permit their children to opt-out of mask wearing, medically fragile children with disabilities and indeed all children are subjected to serious illness or even death as a result of COVID-19 being spread through unmasked breathing, coughing, and sneezing.

96.     In the School District, if optional masking is permitted, the Plaintiffs and those similarly situated will be forced to either attend classes in close proximity to unmasked students, faculty, and staff, or to not attend school in-person.

-20-

97.     Disabled children being forced to attend school remotely while non-disabled students can attend school in person because the District refuses to make accommodations of universal masking so disabled can attend school in-person is discriminatory in violation of the ADA and RA.

98.     The Plaintiffs and those similarly situated use the same hallways, bathrooms, lunchrooms, and classrooms as their fellow-masked and unmasked classmates.

99.     The Plaintiffs and those similarly situated are entitled to safe, fundamental and non-discriminatory access to their school buildings with universal masking of teachers, custodians, parent volunteers, and students.

100.    The necessity for such masking is greater now than ever due to the Omicron Variant. Yet, the policy of the School District to allow optional masking subjects both healthy children as well as children with certain disabilities to serious illness or even death by exercising their fundamental, non-discriminatory right to access their public institutions.

**C.     The School District and the Board of Directors Duties and Responsibilities to Provide a Safe and Healthy Environment for the School Children.**

101.    Defendant School Board is charged by the State with the management and supervision of the public elementary and secondary schools in the District. It derives its authority to govern the local schools directly from the Constitution of the State of Pennsylvania and the rules and regulations of the Pennsylvania Department of Education. School Board Governance and Operations Legal Status - Board of School Directors, Code 2001, 24 P.S. 301 et seq.

102.    The District is governed by a Board of School Directors consisting of nine (9) directors, each of whom is elected on a regional basis for a term of four years. See Board of School Directors, Code 2001, 24 P.S. 301 et seq.

103.    "A school shall make specific and adequate provision for protecting the health and safety of students and for safeguarding their physical welfare." 22 Pa. Code, § 51.22 General Safety.

104.    A school district is responsible "to comply with the requirements of Section 504 and its implementing regulations at 34 CFR Part 104 (relating to nondiscrimination on the basis of handicap in programs and activities receiving or benefitting from federal financial assistance) and implements the statutory and regulatory requirements of Section 504." 22 Pa. Code, § 15.1 (a) Purpose.

105.    "Section 504 and its accompanying regulations protect otherwise qualified handicapped students who have physical, mental or health impairments from discrimination because of those impairments." 22 Pa. Code, § 15.1 (b) Purpose.

106.    "The law and its regulations require public educational agencies to ensure that these students have equal opportunity to participate in the school program and extracurricular activities to the maximum extent appropriate to the ability of the protected handicapped student in question." 22 Pa. Code, § 15.1 (b) Purpose.

107.    "School districts are required to provide these students with the aids, services and accommodations that are designed to meet the educational needs of protected handicapped students as adequately as the needs of nonhandicapped students are met. These aids, services and accommodations may include, but are not limited to, special transportation, modified equipment, adjustments in the student's roster or the administration of needed medication. For purposes of the chapter, students protected by Section 504 are defined and identified as protected handicapped students." 22 Pa. Code, § 15.1 (b) Purpose.

108.    "A school district shall provide each protected handicapped student enrolled in the district, without cost to the student or family, those related aids, services or accommodations which are needed to afford the student equal opportunity to participate in and obtain the benefits of the school program and extracurricular activities without discrimination and to the maximum extent appropriate to the student's abilities." 22 Pa. Code, § 15.3. General.

**D.     Defendants' Actions Constitute a Real and Immediate Violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.**

109.    Defendants currently refuse to provide reasonable accommodations to Plaintiffs and similarly situated students with disabilities by refusing to implement a Health and Safety Plan designed in accordance with current federal, state, and local guidance.

110.    Defendants' Health and Safety Plan now sets forth that mask wearing will be optional while inside the school building and/or on school grounds.

111.    Defendants' refusal to provide reasonable accommodations in the form of an appropriate health and safety plan puts Plaintiffs, and those similarly situated (namely, children with disabilities) at risk of death and debilitating illness from COVID-19.

112.    Defendants' refusal to provide reasonable accommodations for students with disabilities thereby excludes Plaintiffs from access to school buildings and from their in-person education.

113.    Plaintiffs are students with disabilities, including certain underlying medical conditions, which increase their risk of contracting COVID-19 and/or increase their risk of serious complications or death from a COVID-19 infection.

114.     Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504" or "Rehabilitation Act") provide broad protections for individuals with disabilities.

115.     Both federal disability-rights laws prohibit outright exclusion, denial of equal access, or unnecessary segregation for students with disabilities in public education.

116.     Both laws also prohibit methods of administration that defeat the fundamental goals of public schools, that is, to provide an education.

117.     Finally, both federal disability rights laws impose affirmative obligations on covered entities to proactively provide reasonable modifications or reasonable accommodations to ensure that individuals with disabilities have an equal opportunity to benefit from their public education.

118.     School districts with students who have disabilities, including underlying medical conditions, that make them more likely to contract and/or become severely ill from a COVID-19 infection have a legal obligation to ensure that those children can attend school with the knowledge that the school district has followed recommended protocols to ensure their safety.

119.     Currently, the CDC's guidance, the PADOH's protocol—as well as those recommended by Allegheny County Health Department, the American Academy of Pediatrics and the American Medical Association— all include universal masking.

## CLASS ALLEGATIONS

120.     Plaintiffs bring this action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedures on behalf of themselves and a class of similarly situated individuals consisting of all students with disabilities that make them medically vulnerable to severe infection and/or death from COVID-19 and who attend public school in the Upper Saint Clair School District (the "Class").

-24-

121.     The Class is defined as follows: all current and future K-12 students attending or wishing to attend public school in the Upper Saint Clair School District during the coronavirus pandemic who are unable to obtain a vaccine or for whom the vaccine is of limited efficacy due to their compromised or suppressed immune system, and require universal masking as part of a layered approach of protection from infection caused by transmission of COVID-19, as well as all current and future children who attend school in Upper Saint Clair School District who have: (a) lung disease, including asthma, chronic obstructive pulmonary disease (e.g., bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure  and coronary artery disease; © chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; and/or (l) muscular dystrophy or spinal cord injury.

122.     This action has been brought and may properly be maintained as a class action under federal law. It satisfies the numerosity, commonality, typicality, and adequacy requirements for maintaining a class action under Fed. R. Civ. P. 23(a).

123.     Joinder is impracticable because (1) the Class is numerous; (2) the Class includes future members, and (3) the Class members includes many individuals who are incapable due to limited financial means of instituting individual lawsuits.

124.    Numerosity: There are well beyond the necessary number of children in the proposed

Class to warrant class certification. Based on publicly available data, approximately 400 students in

the Upper Saint Clair School District student body suffer from disabilities protected by the ADA and

RA.

125.    Commonality: Common questions of law and fact exist as to all members of the

proposed Class, including: (a) whether Defendants' policies and practices discriminate against the

members of the Class in violation of the ADA and the Rehabilitation Act; and (b) whether the failure

of Defendants to enforce its own order requiring masking in all school located in Defendant School

District discriminates against the members of the Class in violation of the ADA and the

Rehabilitation Act.

126.    Typicality: The claims of the Named Plaintiffs are typical of those of the Class as a

whole, including because (a) each Named Plaintiff is currently attending school at a school within

Defendant School District and (b) the Named Plaintiffs' and all of the Class members' claims arise

from the same wrongful acts, omissions, policies, and practices of Defendants, and are based on the

same legal theories.

127.    Adequacy: The Named Plaintiffs have the requisite personal interest in the outcome

of this action and will fairly and adequately protect the interests of the Class. The Named Plaintiffs

have no interests adverse to the interests of the proposed Class. The Named Plaintiffs retained

counsel with experience and success in the prosecution of civil rights litigation. Counsel for the

Named Plaintiffs know of no conflicts among proposed Class members or between counsel and

proposed Class members. Plaintiffs' chosen counsel includes:

(a.)    Kenneth R. Behrend, of the Behrend Law Group, LLC. Mr. Behrend is a distinguished

member of the Pennsylvania Bar, the Allegheny County Bar, and the Pennsylvania Association for Justice. His practice focuses on consumer protection, and civil rights violations committed by public and private actors specifically including municipal and state governmental entities and includes claims arising under the Civil Rights Act, Americans with Disabilities Act, Section 504 of the Rehabilitation Act. Mr. Behrend served as the law clerk for the class action judge in Allegheny County, the Honorable Silvestri Silvestri, deceased. Mr. Behrend served on the Plaintiffs' Executive Committee as the State Court Plaintiffs' Liaison for the Nationwide Class Action filed against Metropolitan Life Insurance Company as a Multi-District Litigation (MDL) in the Federal District Court in the Western District of Pennsylvania from 1996 until the MDL settled in 2000. *In re: Metropolitan Life Insurance Sales Practices Litigation*, Misc. Docket No. 96-179, MDL 1091 (W.D.Pa. Dec. 28, 1999).  Mr Behrend was also lead counsel on three putative class actions arising out of violations of the Unfair Trade Practices and Consumer Protection Law and has handled multiple collective actions under the UTPCPL and for violations of the Pennsylvania Bad Faith Statute as lead counsel. Currently he is lead counsel on three other cases with claims arising out of violations of the ADA and Section 504 of the RA filed against school districts in Federal Courts in Pennsylvania.

(b.)    Kevin M. Miller of the Behrend Law Group, LLC. Mr. Miller is a distinguished member of the Pennsylvania Bar, and the Allegheny County Bar Association. His practice focuses on consumer protection, and civil rights violations committed by public and private actors specifically including municipal and state governmental entities and includes claims arising under the Civil Rights Act, Americans with Disabilities Act, and Section 504 of the Rehabilitation Act. Mr. Miller also has experience representing individuals in cases with violations of the Unfair Trade

Practices and Consumer Protection Law and the Pennsylvania Bad Faith Statute. Mr. Miller is also counsel in each of the cases alleging violations by School Districts under the ADA and one of the putative class actions identified by Mr. Behrend.

128.    Defendants have acted on grounds generally applicable to all proposed Class members.

129.    This action seeks declaratory and injunctive relief. Injunctive or declaratory relief is proper on a class-wide basis, Plaintiffs therefore seek Class certification under Rule 23(b)(2).

130.    In the alternative, the requirements of Rule 23(b)(1) are satisfied because prosecuting separate actions would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards for the party opposing the proposed Class.

131.    Common questions of fact or law predominate, and class action is superior device for adjudication Rule 23(b)(3).

## CAUSES OF ACTION

## COUNT I

## DISCRIMINATION ON THE BASIS OF DISABILITY
## IN VIOLATION OF THE ADA

132.    Plaintiffs, on behalf of themselves and those similarly situated, repeat and re-allege each and every allegation above, as if set forth in full herein.

133.    The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. §§ 12101(b)(1) & (2).

134.    Enactment of the ADA reflected deeply held American ideals that treasure the contributions that individuals can make when free from arbitrary, unjust, or outmoded societal attitudes and practices that prevent the realization of their full potential.

135.    The ADA embodies a public policy committed to the removal of a broad range of impediments to the integration of people with disabilities into society and strengthening the federal government's role in enforcing the standards established by Congress.

136.    The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

137.    The School District's optional masking policy is denying the District from providing the children of Plaintiffs and those similarly situated with the protections they need to attend school safely. By permitting optional masking, the Board has placed the lives of medically vulnerable children, including Plaintiffs' children, who have disabilities under the ADA in danger. In doing so, Defendants have violated the regulations and provisions of the ADA:

a.    Defendants are failing to make a reasonable modification, under circumstances where it is required, in violation of 28 C.F.R. § 35.130(b)(7);

b.    Defendants are excluding Plaintiffs from participation in public education in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130;

c.    Defendants are failing to make their services, programs, and activities "readily accessible" to disabled individuals, in violation of 28 C.F.R. § 35.150;

d.      Defendants are administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and that has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(3).

138.    The ADA further prohibits any public entity from, either directly or through contractual or other arrangements, using any criteria or methods of administration that (a) have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. §§ 35.130 (b)(3)(I) & (iii).

139.    Defendants do not have the authority to circumvent the ADA and its protections for students with disabilities through School Board votes on policies.

140.    Excluding children from the public school classrooms because of a disability is precisely the type of discrimination and segregation that the ADA and its amendments aim to prevent and specifically prohibit.

141.    Plaintiffs, in their own capacities and as parents of disabled children, seek to compel Defendants to impose a mandatory mask mandate with limited medical exceptions only where such exceptions are supported by proper medical documentation as this is the only reasonable means to provide the disabled children with "non-discriminatory access to public institutions" under the ADA.

142.    Plaintiffs' children are individuals with disabilities recognized under the Americans with Disabilities Act.

143.    Plaintiffs' children are otherwise qualified to participate in school.

144.     Plaintiffs' children are, as disabled students, will be and have been deprived benefits and services to which all students are entitled, specifically the right to attend and participate in all in-person educational opportunities offered by the school for which they are qualified.

145.     JOHN DOE 1, and JANE DOE 1, live in the School District and bring claims in their own capacity and as parent of CHILD DOE 1, who is a student in the Upper Saint Clair School District, is medically fragile and considered to be disabled under the ADA, and brings this action on behalf of themselves and those similarly situated.

146.     According to the medical team who advises JOHN DOE 1 and JANE DOE 1, regarding the medical care and treatment of CHILD DOE 1, universal masking is essential for safe schooling for CHILD DOE 1 because of serious health-related issues. CHILD DOE 1, who is in kindergarten, is medically vulnerable and requires individualized adult assistance.

147.     CHILD DOE 1 is classified as Otherwise Health Impaired, with Medical conditions including Chiari Malforamtion type one, Gastroparesis, with g-tube, Ehlers Danlos Syndrome, (EDS), Co-morbidities and several disorders are associated with EDS and in particular the hypermobile variant (hEDS), Medical PTSD and anxiety.

148.     CHILD DOE 1's medical team opines that universal masking is necessary as part of a layered protection from infection from COVID-19, and that in-person instruction is necessary for CHILD DOE in a Least Restrictive Environment as required by the ADA and Section 504 of the RA.

149.     CHILD DOE 1's physicians concerns are that Covid could not only cause complications with CHILD DOE 1's current diagnoses but threaten CHILD DOE 1's life.

150.     The layered approach to mitigation of the spread of COVID-19 which requires universal masking has been successful in helping CHILD DOE 1 remain in school. CHILD DOE 1

has endured Physical Therapy, Occupational Therapy, therapy, shots, testing, etc in order to remain in a classroom with CHILD DOE 1's friends. CHILD DOE 1 loves school, and CHILD DOE 1's whole life has centered around being healthy enough to go and sit in a classroom.

151.    CHILD DOE 1 is directly and most prominently negatively affected by virtual learning.  As such, JOHN DOE 1 and JANE DOE 1, want, and have a right, to keep CHILD DOE 1 educated via in person learning, which requires a layered approach of protection, including universal masking.

152.    CHILD DOE 1 suffered direct and negative social and emotional consequences from home schooling last year.  The home schooling option provided by the School District only offers one hour per week of direct instruction and not from a kindergarten teacher just a general education teacher. The home schooling option provided by the School District also doesn't offer needed enrichment or therapeutic services.

153.    The home schooling option provided by the School District is extremely difficult on JOHN DOE 1 and JANE DOE 1, since it is they have to manage both of their children with their special medical needs. In addition JOHN DOE 1 and JANE DOE 1 are unable to provide CHILD DOE 1 with needed occupational therapy and physical therapy or any other additional support provided by trained adults while CHILD DOE 1 attends school.

154.    CHILD DOE 1 has done all that is required in order to be successful in school. CHILD DOE 1 has been so sheltered due to CHILD DOE 1's disabilities and conditions. Taking away the autonomy CHILD DOE 1 will gain from kindergarten will negatively effect CHILD DOE 1's overall development.

155.    JOHN DOE 2, and JANE DOE 2, live in the School District and bring claims in their own capacity and as parent of CHILD DOE 2, who is a student in the Upper Saint Clair School District, is medically fragile and considered to be disabled under the ADA, and brings this action on behalf of themselves and those similarly situated.

156.    According to the medical team who advises JOHN DOE 2 and JANE DOE 2, regarding the medical care and treatment of CHILD DOE 2, universal masking is essential for safe schooling for CHILD DOE 2 because of serious health-related issues. CHILD DOE 2, who is in high school, is medically vulnerable and requires individualized adult assistance.

157.    CHILD DOE 2 is classified as Otherwise Health Impaired, with Medical conditions including a rare autoimmune disease, Juvenile Dermatomyositis, which CHILD DOE 2 at an increased risk of harm when it comes to COVID-19.

158.    CHILD DOE 2 will be uncomfortable in the presence of others if they are not wearing a mask. The increased risk of exposure by children and staff not wearing masks will cause CHILD DOE 2 undue stress which could trigger CHILD DOE 2's disease as well as put CHILD DOE 2 at greater risk for infection from COVID-19 and the extreme consequences that come with being immunocompromised. CHILD DOE 2 's disease is life-threatening and the added stress could cause a flare and put CHILD DOE 2 at risk of serious complications.

159.    There School District offers a cyber option, but it is asynchronous. This results in the lead teacher and CHILD DOE 2 only meeting for as little as 3 hours a week. This teacher will take on this extra work beyond their normal classes and they may not be proficient in all subject matters. This puts all the learning on CHILD DOE 2 . There will be little if any real instruction provided. CHILD DOE 2 is in all honors classes at the moment and teacher-led instruction is of the utmost

-33-

importance. JOHN DOE 2 and JANE DOE 2 are unsure if CHILD DOE 2 will be allowed to maintain the honors education track. There is also the possibility that CHILD DOE 2 may be removed from elective classes.

160.     Additionally, the remote option offered by the School District requires CHILD DOE 2 to commit to nine (9) full weeks of remote-based learning, regardless of transmission rate of COVID-19 in Allegheny County which could cause CHILD DOE 2 to fall seriously behind. CHILD DOE 2 is not a true self-starter so this will put a lot of pressure on JOHN DOE 2 and JANE DOE 2 to be sure CHILD DOE 2 is keeping up with workflow and truly learning along the way. It will be difficult to be sure CHILD DOE 2 is on track and progressing with studies. The pressure of having to essentially self-educate on CHILD DOE 2's own could also cause undue stress and trigger a flare-up of the disease. If CHILD DOE 2 has a flare-up it could be very dangerous and potentially life-threatening.

161.     CHILD DOE 2 is directly and most prominently negatively affected by virtual learning. As such, JOHN DOE 2 and JANE DOE 2, want, and have a right, to keep CHILD DOE 2 educated via in person learning, which requires a layered approach of protection, including universal masking.

162.     The layered approach to mitigation of the spread of COVID-19 which requires universal masking has been successful in helping CHILD DOE 2 remain in school.

163.     JOHN DOE 3, and JANE DOE 3, live in the School District and bring claims in their own capacity and as parent of CHILD DOE 3, who is a student in the Upper Saint Clair School District, is medically fragile and considered to be disabled under the ADA, and brings this action on behalf of themselves and those similarly situated.

-34-

164.    According to the medical team who advises JOHN DOE 3 and JANE DOE 3, regarding the medical care and treatment of CHILD DOE 3, universal masking is essential for safe schooling for CHILD DOE 3 because of serious health-related issues. CHILD DOE 3, who is in first grade, is medically vulnerable and requires individualized adult assistance.

165.    CHILD DOE 3 is classified as Otherwise Health Impaired, with Medical conditions including asthma, Sensory Processing Disorder, and hypoglycemia, which CHILD DOE 3 is at an increased risk of harm when it comes to COVID-19.

166.    CHILD DOE 3 is directly and most prominently negatively affected by virtual learning.  As such, JOHN DOE 3 and JANE DOE 3, want, and have a right, to keep CHILD DOE 3 educated via in person learning, which requires a layered approach of protection, including universal masking.

167.    It terrifies JOHN DOE 3 and JANE DOE 3, that with CHILD DOE 3's medical history, if he were to have a long-term illness from COVID-19, CHILD DOE 3 will regress behaviorally, which has happened previously when CHILD DOE 3 was very ill with influenza and was infected with streptococcus through his entire body. JOHN DOE 3 and JANE DOE 3 have spent a significant amount of money on therapies in order to get CHILD DOE 3 to an improved condition CHILD DOE 3 is in now.

168.    CHILD DOE 3 needs the socialization which is provided while a child is in-person at school. Due to CHILD DOE 3's Sensory Processing Disorder, in the last school year CHILD DOE 3 lost much needed socialization because of many meltdowns. CHILD DOE 3 wants to keep those relationships now, which would be lost if forced to go to remote learning.

169.    Last school year,  JOHN DOE 3 and JANE DOE 3 did the school virtual option for CHILD DOE 3 for 3/4's of last year.  CHILD DOE 3 was in half day kindergarten at the time.  JOHN DOE 3, and JANE DOE 3 ended up doing most of the teaching with CHILD DOE 3 because of the limited amount of time with the teacher, who really was trying her best. Attempting to teach CHILD DOE 3, was extremely taxing and emotionally exhausting for JOHN DOE 3, and JANE DOE 3, since neither of them have the skills or training necessary. Additionally, CHILD DOE 3 suffered anxiety from not having peer or teacher interaction. With in-person instruction, CHILD DOE 3 has made so much growth in this school year.

170.    CHILD  DOE  3  is  directly  and  most  prominently  negatively  affected  by  virtual learning.  As such, JOHN DOE 3 and JANE DOE 3, want, and have a right, to keep CHILD DOE 3  educated  via  in  person  learning,  which  requires  a  layered  approach  of  protection,  including universal masking.

171.    JOHN DOE 4 and JANE DOE 4, live in the School District and bring claims in their own capacity and as parent of CHILD DOE 4, who is a student in the Upper Saint Clair School District, is medically fragile and considered to be disabled under the ADA, and brings this action on behalf of themselves and those similarly situated.

172.    According  to  the  medical  team  who  advises  JOHN  DOE  4  and  JANE  DOE  4, regarding the medical care and treatment of CHILD DOE 4, universal masking is essential for safe schooling for CHILD DOE 4 because of serious health-related issues. CHILD DOE 4, who is in fourth grade, is medically vulnerable and requires individualized adult assistance.

173.    CHILD DOE 4 is classified as Otherwise Health Impaired, with Medical conditions including Autism Spectrum Disorder, Moderate Persistent Asthma without complication, Body Mass

Index (BMI), pediatric of 95-99% for age, obese child structured management/multidisciplinary intervention category, and is at a higher risk of complications if develops COVID-19 secondary to these.

174.    CHILD DOE 4 also has vision challenges and executive function challenges. Reading and math has come very slowly. CHILD DOE 4 benefits tremendously from strong educational supports. It is important for CHILD DOE 4 to be included with "typical" peers as much as possible because this helps CHILD DOE 4's social learning. CHILD DOE 4 typically goes to science, social studies, and specials classes with CHILD DOE 4's home room of "typical" peers. CHILD DOE 4 does math and reading in a learning support classroom, and also receives speech therapy and occupational therapy. CHILD DOE 4's varied schedule means that CHILD DOE 4 interacts with a number of children and adults each day, and these interactions are important to CHILD DOE 4's success as a  student and development as a person.

175.    When remote learning was offered last year during the pandemic, JOHN DOE 4 and JANE DOE 4 enrolled CHILD DOE 4 and sibling in "full remote" education for the first three quarters of the school year. The teachers worked hard to provide an adequate program, but JOHN DOE 4 and JANE DOE 4 essentially had to support CHILD DOE 4  full-time to ensure that CHILD DOE 4 was taking part in meetings and engaging people virtually. JOHN DOE 4 and JANE DOE 4 both work full time but made short-term sacrifices in their jobs in order to enable CHILD DOE 4 to participate in remote school. As the school year progressed, it became clear that remote education was insufficient for CHILD DOE 4's learning, and CHILD DOE 4 returned to school in late March. It was very good for CHILD DOE 4 to return to attending school in-person. It is clear that CHILD

DOE 4 is learning and growing in more effective ways now that CHILD DOE 4 is in school full time.

176.    Throughout the pandemic, JOHN DOE 4 and JANE DOE 4 have been concerned and nervous about the ways that COVID might affect CHILD DOE 4, not only for possible ill effects on health, but also about the possibility that CHILD DOE 4's learning may be disrupted by quarantines, closures, and/or the use of inexperienced substitute personnel that may result from this policy.

177.    CHILD DOE 4 is directly and most prominently negatively affected by virtual learning.  As such, JOHN DOE 4 and JANE DOE 4, want, and have a right, to keep CHILD DOE 4 educated via in person learning, which requires a layered approach of protection, including universal masking.

178.    JOHN DOE 5 and JANE DOE 5, live in the School District and bring claims in their own capacity and as parent of CHILD DOE 5, who is a student in the Upper Saint Clair School District, is medically fragile and considered to be disabled under the ADA, and brings this action on behalf of themselves and those similarly situated.

179.    According to the medical team who advises JOHN DOE 5 and JANE DOE 5, regarding the medical care and treatment of CHILD DOE 5, universal masking is essential for safe schooling for CHILD DOE 5 because of serious health-related issues. CHILD DOE 5, who is in sixth grade, is medically vulnerable and requires individualized adult assistance.

180.    CHILD DOE 5 is classified as Otherwise Health Impaired, with Medical conditions including a disorder called Charcot Marie Tooth (CMT) and also has epilepsy. CMT is a neuromuscular condition that causes peripheral neuropathy.  CHILD DOE 5's disability involves difficulty with walking/balance, and CHILD DOE 5 uses a pediatric reverse walker.

181.    JOHN DOE 5 and JANE DOE 5 are very concerned about complications caused by COVID-19 to children who have neuropathy. JOHN DOE 5 and JANE DOE 5 have seen statistics that children with epilepsy have a higher risk of MIS-c and that would be my main concern for her. See e.g. Neurologic Involvement in Children and Adolescents Hospitalized in the United States for COVID-19 or Multisystem Inflammatory Syndrome by Kerri L. LaRovere, MD1; Becky J. Riggs, MD2; Tina Y. Poussaint, MD3; et al, JAMA Neurol. 2021;78(5):536-547. doi:10.1001/jamaneurol.2021.0504. ("Patients with neurologic involvement were more likely to have underlying neurologic disorders (81 of 365 [22%]) compared with those without (113 of 1330 [8%]), but a similar number were previously healthy (195 [53%] vs 723 [54%]) and met criteria for multisystem inflammatory syndrome in children (126 [35%] vs 490 [37%]). Among those with neurologic involvement, 322 (88%) had transient symptoms and survived, and **43 (12%) developed life-threatening conditions clinically adjudicated to be associated with COVID-19,** including severe encephalopathy (n = 15; 5 with splenial lesions), stroke (n = 12), central nervous system infection/demyelination (n = 8), Guillain-Barré syndrome/variants (n = 4), and acute fulminant cerebral edema (n = 4)."). (emphasis added).

182.    "Children with neurologic involvement had a higher rate of survival with new neurologic deficits (20 of 365 [5%]) compared with those without COVID-19–associated neurologic involvement (2 of 1330 [0.2%]) (Table 1). Neurologic deficits in those without neurologic involvement included cognitive and motor impairments as a result of sequelae of critical illness and intensive care therapies." See Id.

183.    "Neurologic involvement in most patients was transient and resolved by hospital discharge; however, 43 patients (12%) developed a range of life-threatening neurologic conditions

associated with COVID-19, and 66% of these patients had unfavorable outcomes, including death or new neurologic disability at hospital discharge."  See Id.

184.    CHILD DOE 5 receives physical therapy and occupational therapy while attending school on an as needed basis.

185.    CHILD DOE 5 is directly and most prominently negatively affected by virtual learning.  As such, JANE DOE 5, wants, and has a right, to keep CHILD DOE 5 educated via in person learning, which requires a layered approach of protection, including universal masking.

186.    CHILD DOES 1-5 all suffer from disabilities under the ADA, detailed above, and are thus protected by the ADA and Section 504 from discrimination based on each's disability.

187.    The putative class of students Plaintiffs represent similarly suffer from a host of conditions warranting protection under the ADA and Section 504 and should be shielded from discrimination by their school district.

188.    Excluding children with disabilities which make them more susceptible to serious illness or death from COVID-19 from the public school classrooms by a failure or refusal to provide a reasonable modification (universal masking) for their disability is precisely the type of discrimination and segregation that the ADA and its amendments aim to prevent and specifically prohibit.

## COUNT II

## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973

189.    Plaintiffs, on behalf of themselves and those similarly situated, do repeat and reallege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

190.    Plaintiffs and those similarly situated are children with disabilities that substantially limit one or more major life activity, and therefore, are considered to be persons with a disability under Section 504 of the Rehabilitation Act, as amended. See 29 U.S.C. § 705(9)(B), as amended by the ADA Amendments Act, Pub. L. 110-325, Sec. 7, 122 Stat. 3553 (Sept. 25, 2008).

191.    Plaintiffs are otherwise qualified under Section 504 of the Rehabilitation Act because they meet the essential eligibility requirements for public education in the Commonwealth of Pennsylvania.

192.    Defendants, in their official capacities, are the recipients of federal financial assistance.

193.    The Board's January 10, 2022 vote is denying the District the ability to provide the Plaintiffs' children, and others similarly situated with the accommodations they need to attend school safely.

194.    Plaintiffs' children are individuals with a disability recognized under the Section 504 of the Rehabilitation Act.

195.    Plaintiffs' children are otherwise qualified to participate in school.

196.    A public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for such combination of school districts or counties, are recognized in a State as an administrative agency for its public elementary schools or secondary schools.

197.    Although a state is not required to maximize the potential of every handicapped child, it must supply an education that provides "significant learning" and "meaningful benefit" to the child.

198.    Section 504 of the Rehabilitation Act provides that: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794 (a).

199.    Defendants have violated the regulations and provisions of Section 504, as follows:

    a.    Defendants are excluding Plaintiffs from participation in public education, in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(b)(1)(i);

    b.    Defendants are using methods of administration that have the effect of subjecting Plaintiffs to discrimination on the basis of disability, in violation of 34 C.F.R. §104.4(b)(4);

    c.    Defendants are using methods of administration that have the effect or purpose of defeating or substantially impairing accomplishment of the objectives of the public education provided by school districts, in violation of 34 C.F.R. § 104.4(b)(4).

200.    Defendants do not have the authority to circumvent Section 504 and its protections for students with disabilities through Board votes.

201.    Excluding children from public school classrooms because of a disability is precisely the type of discrimination and segregation that Section 504 aims to prevent and specifically prohibit.

202.    Excluding children with disabilities which make them more susceptible to serious illness or death from COVID-19 from public school classrooms by a failure or refusal to provide a

reasonable modification (universal masking) for their disability is precisely the type of discrimination and segregation that Section 504 aims to prevent and specifically prohibit.

## REQUEST FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

203.    Plaintiffs repeat and re-allege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

204.    Plaintiffs seek a temporary restraining order enjoining the School Board from enforcing the vote of January 10, 2022 permitting optional masking effective January 24, 2022.

205.    Plaintiffs seek a preliminary injunction enjoining the Defendants during the course of this litigation from enforcing the vote of January 10, 2022 permitting optional masking.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and those similarly situated respectfully request that this Court grant the following relief:

A.    Assume jurisdiction of this action;

B.    Certify this Petition as a class action;

C.    Declare that the School Board's vote of January 10, 2022 permitting optional masking violates the rights of Plaintiffs and those similarly situated under the Americans with Disabilities Act and Section 504;

D.    Issue a temporary restraining order enjoining Defendants from violating the Americans with Disabilities Act and Section 504 by permitting optional masking in the School District;

E.      Issue preliminary and permanent injunctive relief enjoining Defendants from violating the

Americans with Disabilities Act and Section 504 by permitting parents optional masking;

F.      Award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42

U.S.C. § 1988; and

G.      Grant such other and further relief as may be just, equitable and proper.

Date: January 19, 2022                                  Respectfully submitted,

By: /s/*Kenneth R. Behrend*

Kenneth R. Behrend
Pa. I.D. No. 37961
BEHREND LAW GROUP LLC
The Pittsburgher, Suite 1700
428 Forbes Avenue
Pittsburgh, PA 15219
(412) 391-4460 (Telephone)
(412) 391-5073 (Facsimile)
krbehrend@behrendlawgroup.com
Counsel for Plaintiffs

-44-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Complaint was served by e-mail on this 19th  day of January 2022, addressed to the below parties and counsel:

School Board Solicitor
Mrs. Jocelyn Kramer
Weiss Burkardt Kramer LLC
445 Fort Pitt Boulevard - Suite 503
Pittsburgh, PA 15219
jkramer@wbklegal.com

Board Member
Mr. Phillip J. Elias
pelias@uscsd.k12.pa.us

Board Member
Daphna Gans
dgans@uscsd.k12.pa.us

Board Member
Mrs. Barbara L. Bolas
bbolas@uscsd.k12.pa.us
Board Member
Mr. Patrick A. Hewitt
phewitt@uscsd.k12.pa.us

Board Member
Mr. Louis P. Mafrice, Jr.
lmafrice@uscsd.k12.pa.us

Board Member
Mr. Michael R. Mascaro
mmascaro@uscsd.k12.pa.us

Board Member
Mrs. Angela B. Petersen
apetersen@uscsd.k12.pa.us

Board Member
Mrs. Jennifer A. Schnore
jschnore@uscsd.k12.pa.us

Board Member
Danielle Z. Wetzel
dwetzel@uscsd.k12.pa.us

John Rozzo, Superintendent
jrozzo@uscsd.k12.pa.us

Respectfully submitted,

By: /s/Kenneth R. Behrend
Kenneth R. Behrend
Counsel for Plaintiffs
Pa. I.D. No. 37961
BEHREND LAW GROUP LLC
The Pittsburgher, Suite 1700
428 Forbes Avenue
Pittsburgh, PA 15219
(412) 391-4460 (Telephone)
(412) 391-5073 (Facsimile)
krbehrend@behrendlawgroup.com